**ROBERTS, Admr., Appellant,**

v.

**FRASIER et al., Appellees.**

[Cite as *Roberts v. Frasier*, 166 Ohio App.3d 199, 2006-Ohio-312.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20989.

Decided Jan. 20, 2006.

David M. Deutsch, for appellant.

Deborah R. Lydon and Jennifer Orr Mitchell, for appellees Bruce B. Banias, M.D. and Pro–Wellness Health Management Services, Inc.

---

WOLFF, Judge.

{¶ 1} Vincent Roberts, administrator of the estate of Patricia Roberts, appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment on his wrongful-death claim in favor of Bruce Banias, M.D., and the company for which Banias worked, Pro–Wellness Health Management Services, Inc.

{¶ 2} In 1999, Patricia Roberts, age 33, was pregnant for the second time and was under the care of Percy L. Frasier, M.D., an obstetrician and gynecologist. Her pregnancy was characterized as high-risk, due in significant part to her morbid obesity and diabetes. In Mrs. Roberts's 33d and 34th weeks of pregnancy, urine tests conducted during office visits showed protein excreted into her urine. She also suffered from significant swelling and complained of some difficulty breathing. At an office visit on November 11, 1999, the amount of protein in Mrs. Roberts's urine was further elevated, as was her blood pressure. She was admitted to Franciscan Medical Center to be evaluated for preeclampsia. Frasier contacted Banias, a perinatologist, that same day to have him evaluate Mrs. Roberts. Frasier was leaving town and left Mrs. Roberts in the care of Banias and another doctor.

{¶ 3} Banias performed tests to determine whether Roberts was suffering from preeclampsia. Her respiratory status declined due to pulmonary edema. On November 13, 1999, Mrs. Roberts underwent an emergency cesarian section due to her respiratory status. The baby was delivered safely, but Mrs. Roberts's health continued to decline. She died on November 19, 1999, due to adult respiratory distress syndrome.

{¶ 4} On September 12, 2000, Vincent Roberts brought a wrongful-death action against Frasier. Roberts subsequently amended the complaint to name additional defendants, including Banias and Pro–Wellness. On November 21, 2002, Banias and Pro–Wellness filed a joint motion for summary judgment. The trial court denied the motion on December 29, 2003. Banias and Pro–Wellness subsequently renewed their motion for summary judgment, and the trial court granted summary judgment on December 10, 2004. The matter proceeded to trial against Frasier, and the jury found that he had not acted negligently.

{¶ 5} Roberts raises two assignments of error on appeal from the summary judgment in favor of Banias and Pro–Wellness. We will consider these assignments together.

{¶ 6} 1. "The trial court erred as a matter of law by granting summary judgment in favor of appellee, and by determining that appellant's use of defendant Dr. Frasier's expert as evidence lacked efficacy."

{¶ 7} 2. "The court erred as a matter of law by weighing the evidence to determine that Dr. Sibai's testimony did not create a question of material fact as to whether appellee's negligence proximately caused the injury and death of Patricia Roberts."

{¶ 8} Roberts claims that the trial court's rationale for granting summary judgment was flawed.

{¶ 9} The trial court noted that Roberts had not offered "any expert medical opinion" by deposition or otherwise that Banias had breached the standard of care and that, instead, he had tried to rely on the deposition testimony of Dr. Baha M. Sibai, an expert who had been named by codefendant Frasier. Sibai did testify that Banias's handling of the case had fallen below the standard of care. The court noted that Roberts's own expert, Mark Landon, stated that Banias had met the standard of care in his treatment of Roberts. The trial court's analysis implies that Roberts was precluded from relying on the testimony of another party's expert in opposition to the motion for summary judgment. The court went on to find, however, that even Sibai's testimony had failed to establish that Banias's alleged breach was the proximate cause of Mrs. Roberts's death. Thus, the trial court seems to have concluded that summary judgment would have been appropriate even if Roberts had been allowed to rely on Sibai's testimony.

{¶ 10} Roberts argues that the trial court erred in two respects: first, in not permitting him to rely on expert testimony offered by another party and, second, in finding that this expert's testimony did not create a genuine issue of material fact as to proximate causation.

{¶ 11} The trial court did not cite any authority for its view that Roberts was not permitted to rely on testimony offered by another party in opposing the motion for summary judgment. Civ.R. 56(C) certainly does not impose such a limitation. It simply required Roberts to show that a genuine issue of material fact existed by using the types of documentary evidence permitted under the rule. In our judgment, Roberts was permitted to rely on expert testimony offered by other parties.

{¶ 12} Moreover, we are wholly unpersuaded by Banias's argument that Roberts could not rely on Sibai's deposition testimony in opposition to the motion for summary judgment because Sibai had not agreed to testify on Roberts's

behalf at trial. We are not at all convinced that this argument is even supported by the record. The record contains no affirmative statement attributable to Sibai that he is unwilling to be a witness for Roberts. Rather, this alleged unwillingness of Sibai to be an expert witness for Roberts appears to have been inferred from the absence of Sibai's name on Roberts's witness list and Sibai's affidavit statement that, having been once deposed, he had no further opinions to offer.

{¶ 13} Assuming arguendo that Sibai is unwilling to testify for Roberts, Banias suggests that he should not have to sit through a trial at which Roberts would presumably have no expert witness to support his case, simply to obtain a directed verdict. Rather, he asserts that this is precisely the point of summary judgment. While Banias is correct that the purpose of summary judgment is to filter out claims that cannot succeed at trial, he is incorrect in his suggestion that Roberts must necessarily rely on an expert for purposes of summary judgment who will also be his expert at trial. When the motion for summary judgment was filed in November 2002, no trial date had been set, and Roberts presumably had several additional months to obtain experts for trial if Sibai is truly unwilling to testify for Roberts. Thus, Sibai's alleged unwillingness to testify for Roberts at trial should have had no bearing on the motion for summary judgment.

{¶ 14} Having concluded that the trial court erred in holding that Roberts was not permitted to rely on expert testimony offered by another party in opposition to a motion for summary judgment, we now turn to whether Roberts was prejudiced by this holding. The trial court also concluded that Sibai's testimony failed to create a genuine issue of material fact as to proximate causation. If this conclusion is correct, then Roberts was not prejudiced by the trial court's ruling that he could not rely on Sibai's deposition testimony.

{¶ 15} Sibai testified that Mrs. Roberts's pulmonary edema was not managed properly. He asserted that her breathing difficulties and edema should have been treated more aggressively and more effectively on the evening of November 12, when Banias saw the patient around 5:00. By midnight, when another doctor checked on her, Mrs. Roberts had deteriorated, there had been additional damage to her capillaries, and several vital hours had been lost. Sibai also testified that the information in the charts indicated that Dr. Banias "was in charge of this patient" when the crucial treatment decisions were made late in the day of November 12. He described it as "very inappropriate" for Banias to have suggested that a nurse who called him about Mrs. Roberts while he was tied up with another patient call a family practice physician about the case.

{¶ 16} Sibai further testified that Mrs. Roberts would still be alive if, upon being unable to properly oxygenate Mrs. Roberts in the early evening of November 12, Banias had done a cesarian section to relieve the pressure within a reasonable time. Roberts's counsel then had the following exchange with Sibai:

{¶ 17} "Q: * * * So a proximate cause of Patricia Roberts' death was the failure of Dr. Banias to follow the standard of care that you would expect of an ob-gyn in the Dayton area in 1999?

{¶ 18} "A: I don't like to use this term. What I will say, this woman developed pulmonary edema, she could develop hypoxia.

{¶ 19} "Q: Right.

{¶ 20} "A: Because the physician did not take care of this she developed the ARDS [adult respiratory distress syndrome] as a result of that.

{¶ 21} "Q: And was that physician's actions negligent in not taking care of the lady?

{¶ 22} "A: I will say they were. It was inappropriate for him not to have come and taken care of her.

{¶ 23} "Q: What does inappropriate mean, you have heard standard of care, you have heard the word negligent?

{¶ 24} "A: You see, negligent is a legal term here.

{¶ 25} * * *

{¶ 26} "Q: Do you use standard of care?

{¶ 27} "A: Yes.

{¶ 28} "Q: And were his actions below the standard of care, [the actions of] Dr. Banias?

{¶ 29} "A: Yes."

{¶ 30} The pivotal question is whether Sibai's testimony was sufficient to create a genuine issue of material fact on the issue of proximate causation. The trial court apparently concluded that it did not create a genuine issue because, when asked specifically about proximate causation, Sibai did not provide a direct, affirmative answer. In our judgment, however, it is clear from Sibai's testimony that he viewed Banias's care as substandard and considered that substandard care to have been the proximate cause of Mrs. Roberts's death, notwithstanding his dislike for the use of the term "proximate cause." Construing this evidence most strongly in favor of Roberts, we conclude that the trial court erred in concluding that there was no evidence to support the conclusion that Banias's care was the proximate cause of Mrs. Roberts's death.

{¶ 31} The first and second assignments of error are sustained.

{¶ 32} The judgment of the trial court is reversed, and the matter is remanded for further proceedings.

Judgment reversed<br>and cause remanded.

GRADY, J., concurs.

DONOVAN, J., dissents.

GRADY, P.J., concurring.

{¶ 33} I agree that whether Dr. Sibai is unwilling to testify on the plaintiff's behalf, which is not affirmatively shown on this record, is immaterial. The issue, instead, is whether the testimony in Dr. Sibai's deposition is evidence that is admissible for the purpose for which plaintiff would offer it at trial. That purpose would be to prove negligence and proximate cause. Dr. Sibai's reluctance to frame his opinions in these precise terms is not fatal to the plaintiff's case at this stage, so long as in their substance Dr. Sibai's opinions, construed most strongly in plaintiff's favor, constitute "specific facts showing that there is a genuine issue for trial." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. For the reasons that Judge Wolff has explained, I agree that plaintiff satisfied that burden by relying on Dr. Sibai's testimony.

DONOVAN, Judge, dissenting.

{¶ 34} I disagree. The trial court correctly noted that Roberts's own expert, Mark Landon, M.D., stated that Dr. Banias had met the standard of care in his treatment of Roberts. Lacking an expert, appellant sought to "misappropriate" (rely) upon Dr. Baha M. Sibai, an expert who had been named by a codefendant, Dr. Frasier. This came about some three-plus years into the original complaint of medical malpractice. This certainly can be likened to changing horses in the final stretch—a risky maneuver, to be sure, but allowable, since Dr. Sibai's name appeared on the witness list of a codefendant, Dr. Frasier, and appellant reserved the right to call defense experts. However, if you are going to change horses, find one that is able/willing to cross the finish line.

{¶ 35} The real difficulty for appellant, as the trial court correctly noted, is that the deposition testimony of Dr. Sibai fails to create a genuine issue of material fact establishing that any alleged malpractice by Dr. Banias proximately caused Mrs. Roberts's death.

{¶ 36} The majority concludes that it is clear that Dr. Sibai considered substandard care by Dr. Banias to have been the proximate cause of Mrs. Roberts's death. This is not clear, however, from his entire testimony. In fact, Dr. Sibai failed to provide any medical opinion within a reasonable degree of

medical certainty or probability as to the proximate cause of Mrs. Roberts's death.  Unless an expert expresses his or her opinion in terms of probability, the testimony shall be excluded as speculative.  *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44.  Appellant failed to put forth competent evidence on the issue of proximate cause.  It cannot simply be inferred.  A thorough review of Dr. Sibai's deposition reveals that he was unable or unwilling to testify to a reasonable degree of medical certainty that any alleged breach of duty by Dr. Banias proximately caused Mrs. Roberts's death as a result of pulmonary edema.

{¶ 37} The testimony of Baha Sibai, M.D., codefendant Dr. Frasier's expert, is relied upon by appellant as the sole support for his opposition to Dr. Banias's motion.  Dr. Sibai is not a pulmonary specialist, nor was he subject to examination by Dr. Banias's counsel, since his deposition was taken when Dr. Banias had been dismissed from the case.

{¶ 38} The testimony of Dr. Sibai is laden with instances in which either no facts are offered to support his criticisms or his understanding of those facts is not established:

{¶ 39} 1.  Dr. Sibai speculate that the plaintiff's oxygen saturation level was 90–92, when it was actually 95–96.

{¶ 40} 2.  Dr. Sibai testified that Dr. Siva told Dr. Banias, "Yes, you should come right now and assume the care of this patient," when there is no indication in the record that Dr. Siva said any such thing.

{¶ 41} 3.  Dr. Sibai criticized the fact that Swan–Ganz catheterization and positive pressure breathing were not used by Dr. Banias, then admitted that that treatment might not have made a difference.

{¶ 42} 4.  Dr. Sibai speculates as to what *might have occurred* had a pulmonary specialist been involved and, when asked to clarify his conclusion, said, "I don't want to speculate, but all I am saying is that I don't know whether somebody have [sic] done the right thing at that time what would have been the response."

{¶ 43} Speculation and inferences are not adequate to support plaintiff's claims against Dr. Banias.  Dr. Sibai's testimony does not constitute competent opinion testimony, is little more than an inference on inference, and cannot be considered as having appropriate probative force.

{¶ 44} Appellant *is required to establish,* through expert testimony, (a) the prevailing standard of care of doctors under similar circumstances, (b) the defendant doctor's deviation from that standard of care, and (c) that the deviation by the defendant doctor proximately caused the plaintiff's injuries.  *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 132, 75 O.O.2d 184, 346 N.E.2d 673, 677–678.

More specifically, appellant must demonstrate that "the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions and circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result" thereof. Id. at 127, 75 O.O.2d 184, 346 N.E.2d 673. Appellant has not done so, even construing the testimony of Dr. Sibai in a light most favorable to plaintiff's case.

{¶ 45} Dr. Sibai clearly did not adequately testify regarding proximate causation: in fact, he declined to do so. Jurors are not permitted to speculate concerning the prospects of success from a course of medical treatment without medical testimony concerning both the appropriate treatment and the probability of success, since these matters are not within the common knowledge of laypersons. *Sweeney v. Deaconess Hosp. of Cleveland,* (Dec. 30, 1993), Cuyahoga Cty.App. Nos. 64349, 64357, 1993 WL 541589.

{¶ 46} I would affirm the trial court's grant of summary judgment.